Good morning, your honors. May it please the court, my name is Daniel Johnson and I'm here for the appellant plaintiff, Jared Peck, in this consumer protection case in which the district court dismissed all claims as preempted by the Federal Communications Act. Had a class been certified? No. All right. There have been lots of submissions of supplemental authority since the briefing and I just wanted to quickly review the three bases upon which, independently, we urge reversal of the district court's decision on preemption. The first is essentially jurisdictional, that the district court did not have the authority to determine the validity of an FCC order, which it did. Under the Hobbs Act, there is a very specific system for reviewing an FCC order. The FCC order in 2005 directly addressed the preemption argument made by the defendants here and it was reviewed by the 11th Circuit through the Hobbs Act and that decision is not subject to collateral attack in a district court or frankly even this court. Could the district court interpret the FCA to include in the word rates a line item charge, independent of the FCC order? No, as a practical matter, it could not in this case. No, no, no, no, not as a practical matter because I don't know what you mean by practical. The use of the adjective is misleading. Could it use its own knowledge of what the word rates and line items were in determining whether the FCA use of the word rates includes line items so that therefore under the, forget about what the FCC said. Let's grant your premise. Could it have made that determination? Our next question after that will be did it? I don't think it could and I don't think it did. Is that what we have to do? No. If you're right? No. If you're right about the FCC order being vacated by the 11th Circuit judgment, which I am inclined to think you are right, then don't we have to determine as an initial matter for the 9th Circuit whether line items are included within the word rates in the FCA? Isn't that the one issue we have to determine? No. Are we barred from determining that? Yes. By what? I would urge you to look at the case. This Court decided it's Wilson v. A.H. Bellow. It cited at least some of the briefs. That's certainly the amicus brief, I believe, by Nisuka itself, 87F3rd at page 400, where this Court addressed that question. Once the decision has been made on the merits by the Hobbs Act Court, another circuit cannot ---- Pardon me, Counsel. I do understand what your question is. I'm sorry if I'm not answering it. But isn't all the 11th Circuit did was to vacate the second report and order? No. And say, that's wrong, and that order is vacated, and the FCC can no longer enforce it. The FCC can no longer enforce it. Let that sink in, right? It's talking about what the 11th Circuit finds the FCC cannot do. But you're saying that that goes further, and you're saying when FCC can't do it, guess what? The 9th Circuit can't do it either. Isn't that what you're saying? I am, Your Honor, and that's as a result of the Hobbs Act. Is there any authority for that? A.H. Bellow. Your authority is Wilson v. A.H. Bellow. That's right. If they know that, Counsel, we would like to hear about that. The case indicates that if merely the effect of a decision in another court would be to determine the validity of the order, then it's a collateral attack that cannot be made in the district court or on appeal. And the effect of this court deciding that, in fact, the FCA preemption provision, distinguishing between rates and other conditions of service, includes in the first clause rates, line-item charges for surcharges like this, then this court would be, in effect, determining that, in fact, the FCC was right. The 11th Circuit's wrong. If the 11th Circuit did just vacate that order. We wouldn't be determining the FCC was right. We don't have the FCC before us. We don't have any orders of the FCC. We would just be determining that, by our lights and by our statutory interpretation, line items are included in rates. Now, you might say that there was an inter-circuit split as a result of that. I would not agree with you because I would think that the 11th Circuit order dealt only with the FCC order and not the question of interpretation of what rates included or did not include. If Your Honor is saying that the 11th Circuit decision only accomplished the procedural, essentially procedural effect of vacating that order and did not substantively hold that, in fact, this section of this act, the Federal Communications Act, the definition of rates does not include, substantively, does not include, as a matter of law, the regulation of line item charges added to the service rate, then I just have to disagree. I mean, our position is certainly that on the... I have no dispute because your argument would be the 11th Circuit can't get to the annulment of the FCC order unless it finds that rates do not include line items. And they did. I'm not sure I'm following that. Are you saying that's what I'm saying? Yeah. That sounds like what I'm saying. I think that's what you're saying. It's a good argument. I'm just saying, you know... Thank you, Your Honor. ...we don't have any cases that really tell us which way to go. I do think that this Wilson case does because... All right, I'll take a look at it. ...it says any ruling by these courts in these other circuits, whether it's the District Court in the first instance, as it was in that case and it was here, or the Circuit Court, this court, on review, it would be in effect, not directly, not explicitly, but in effect validating this FCC order. Let me... Where did the Wilson case come from? What circuit? This one. This one. Yeah, and I'll just quickly give you the background. Pete Wilson was the governor of California, and he and a lot of other candidates sued a lot of broadcast stations for charging them too much for ads. And the FCC decided actually during the pendency of one of these actions that any claim under that section of the Federal Communications Act about the charges for broadcasts would be preempted. You couldn't bring... It's the agency preemption. You can't bring that claim in court. The FCC decided you have to come to us. And that decision was actually... There were petitions to review that decision in several circuits, and under the Hobbs Act the MDL consolidated them just as in this case. The Eighth Circuit rendered a decision vacating that FCC order. And this court held that Wilson's attempt to have that FCC order reviewed here in the district court here didn't have jurisdiction to do that. But that's a different issue than what Judge Baez said. Follow me, if you will, with this and tell me where I'm wrong. You've got the FCC's second report in order holding the line items were right. The Eleventh Circuit vacated the order in the NASUCA versus FCC case. All the appeals were consolidated in that action and determined that it binds all courts. But under Durning versus Citibank, a decision that's been vacated has no presidential authority whatsoever. So for purposes of that regulation, it's as if it had never been adopted for our analysis. Do you agree with that? I do accept that the district court relied on it almost exclusively. I'm just saying, let's assume for a moment that that order vacated it has no presidential value. So here we are with a Ninth Circuit Court of Appeals. You've got a case in our jurisdiction. And we're looking at a regulation. Ab initio, if you will. Why can't we look at that and construe it for purposes of our deciding this case? Your Honor, I probably can't add much more. Our answer to that is because that would essentially screw up the whole Hobbs Act scheme. It doesn't make any sense to say you've got to... But wait a minute. The Hobbs Act's real clear about what happens once you have a decision and the method that you follow. But what we're saying here is the Eleventh Circuit vacated it. It's as if it never occurred for legal purposes. So I'm not clear where the Hobbs Act gets violated here. My question is, let's just say hypothetically that we were enamored with the Eleventh Circuit's reasoning. We're not bound by their decision. Let's say we really like their reasoning. We think they're absolutely right. Why could not we look at the same regulation and say, we like this reasoning. This is how we construe this regulation as applied to this case in the state of Washington? Well, because our position is that the error was in the district court entertaining the argument that this issue, that this kind of a claim is preempted in the first place. I understand that. But again, I'm not saying this is going to hurt you. No, I understand. You don't know which way this is going to go. But the reality is, as Judge Baez has intimated here, in effect what you're telling us is that we can't even consider this. Let me draw it out of the box. It's done because you're preempted. That's right. Why would you be arguing that? Well, I just think analytically one has to step through that hoop before one can look at the merits of the question. And I'm prepared to address the merits of the question. Yeah, I understand. But I think we all want to be sure that we're clear on the jurisdictional issue here. Is there anything in the Wilson case that would bar us since this FCC order was void ab initio, or at least it has no presidential value? Is there any reason why we cannot construe the FCC regulation and make our own determination as to whether or not it has any implication for rates and whether or not it preempts and so on using the analysis of the Eleventh Circuit, our own analysis, or something else? First of all, you probably mean construing the statute itself, right? Yes.  I apologize. Yes, I mean the statute. Again, I would say that under the Hobbs Act, the district court didn't have discretion to look at that in the first place. But I don't want to repeat myself. And one other case I'd commend about that issue. Let's say you're right about the district court. We're talking about us now. Why can't the Ninth Circuit Court of Appeals look at the statute in this case and construe it? The Wilson case, I think, does answer that. If the district court didn't have jurisdiction. The answer is that we can't. I do. But if that's the case, then what you're saying is that your case is over, isn't it, because you're preempted? No, we're not preempted. The case should be reversed, remanded to the district court to hear the case on the merits, or in this case, in fact, probably remand the case to state court. But there is no preemption defense in this case as the result. Let me ask the court to look at one other case on this very issue, the circuit versus circuit issue. It's this court's MCI telecommunications case that we cited, 204F3rd at 1267, where this court, again, discussed exactly how the different circuits view each other's decisions under the Hobbs Act. And if I might, unless the court has more questions about that issue. Just to be sure, I have the Wilson side again. Is it 87F3rd at 400? Yeah, that's the Penn side. Okay. Even if this court were to reach the merits of the question under the Federal Communications Act, of course, we're urging that the court agree with the Eleventh Circuit. Singular is urging that this court create the circuit split on this question. And the reason why the Eleventh Circuit was correct and the Federal Communications Act does not preempt these claims is because the statute, the Congress clearly carved out a broad area in which the states could regulate. And that you cited the MCI case. And I have a quotation here which indicates to me that the MCI court and Ninth Circuit agreed with you 100 percent that the Eighth Circuit in that case became and remains, quote, the sole forum for addressing, dot, dot, dot, the validity of the FCC's rules, unquote. I understand, Your Honor. That's all it said. It didn't say we cannot now independently determine what the FCA means. That wasn't an issue. You're right. And our position is that it includes the substance of what the other circuit did as well, or else it doesn't really have a lot of meaning. And as I was saying, in terms of the merits, the carve-out by Congress for other terms and conditions clearly would include line-item charges, which a carrier allegedly adds to its rate for service, or else there would be very little to give meaning to that. And that has historically been the position of the FCC. The FCC has historically said rates in this provision refers to those things which there must be some service attached to the item you're speaking of, or it cannot be a rate. So the rate for service in this case is Singular's rate for its rate plan or the service charges that it imposes. But when it adds another line-item charge to the bill, this is another term and condition of service. The Pittencrieff case by the FCC is what I urge the Court to look at, where the FCC rejected this concept that the states can't impose universal service fund charges on carriers. And the Court addressed this question of whether a regulation, a state regulation, would have a direct or indirect effect potentially on rates of service. Are you arguing that we ought to give deference in the interpretation of the word rates in the FCA to what the FCC has interpreted under Chevron? Is that what you're arguing? That's interesting. I hadn't thought of that. Well, I mean, if you think about that, then we should go back to the FCC's second ordinance report because they dealt with it directly, and that's been vacated by the 11th Circuit. As Judge Smith indicated, it's a melody. We can consider what the FCC said, but we can consider something a little bit tangential as to how they interpreted it. That doesn't seem very logical to me. Well, that's precisely what the 11th Circuit did. The point that the 11th Circuit made and that I'm trying to make is that this construction that's singular is urging upon you of this statute is unreasonable given not only the plain language of the statute but also what the FCC has historically done, which gives context. The 11th Circuit didn't even apply in Chevron? Yes, right. It's important to note that singular here didn't treat this as part of its rate. That's the very nature of our claim in this case. Singular is advertising a certain rate for service, which people are comparing to other competitors' rates, and they don't know about this add-on charge that's going to be added, which the competitors aren't adding. So it doesn't make sense in a practical sense, historical sense, or legal sense to put the line-item charge regulation in this case on the side of rates when there is this other terms and conditions. Are you going to reserve any time for rebuttal? I wanted to do that. You better do that. Let me make one last point for reversal, which is even if you did agree with the FCC, disagreed with the 11th Circuit, and this is elaborated in our letter briefs, Washington law under the Appleway case is clear that it does not strictly prohibit line items on carrier bills. It does not prohibit itemization of the costs. It only prohibits putting it on after the fact, adding it to the rate as if it were a tax on the consumer. Thank you. Good morning. May it please the Court. I'm Scott Johnson on behalf of Singler. With me is Co-Counsel Shelley Hall. The Hobbs Act is a complete red herring in this case. The issue before the Court is whether the issue before the Court. Because you wouldn't be here if it wasn't, right? Because I wouldn't be here if it wasn't. The issue before the Court is how to interpret Section 332. It is not the issue before the Court, the validity of the FCC's second report in order. The district court didn't examine that second report in order, didn't examine the Nasuka case to determine whether the Nasuka case should have invalidated it. It didn't make any attempt at all to invalidate, enjoin, set aside, or overrule the Eleventh Circuit. Whatever the basis of the district court's decision, we reviewed the legal aspect of that de novo, do we not? Absolutely, Your Honor. That is a critical point here. The standard of review in a preemption case is de novo. It doesn't matter what the district court did. It doesn't matter whether it relied on Chevron deference or didn't. What matters is what's the statutory interpretation of Section 332. This wasn't the Eleventh Circuit pretty much online and using dictionary definitions which define rate as a charge dependent on another fact or unit, such as when I call somebody, it's $5 a minute. That's a rate. Why isn't that the right way to read rate so as to exclude a line-item charge of 31 cents, which is a flat charge whether you use a lot of time or whether you use no time? Your Honor, I think the Eleventh Circuit in its Nasuka decision is wrong for a number of reasons. One reason is that it totally ignored the Supreme Court's rulings with regard to Chevron deference. I don't think it gave Chevron deference the way it should have given to the FCC's second report in order. But you're asking us then to review the Eleventh Circuit's? Yeah, you do. You say they're wrong. I do think they're wrong, Your Honor. I'm not asking you to review their decision. I'm simply explaining why I think the Eleventh Circuit is wrong. But if the Eleventh Circuit, pursuant to the Hobbs Act, has vacated the second report in order, how can it give Chevron deference to a vacated order? I'm not asking this Court to give Chevron deference to the FCC's second report in order. I'm saying that the Eleventh Circuit is wrong in part because it did not give Chevron deference to the second report in order. We can't look at the Eleventh Circuit decision vacating the second report in order. The Hobbs Act is clear on that. That's binding on us, and we have to follow it under MCI, correct? It's binding to the extent that if this Court were being asked to review the validity of that FCC order, you can't do that. Hobbs Act says that. I understand that. That's not what I'm saying. What I'm saying is the Eleventh Circuit got it wrong. One of the reasons the reasoning it got it wrong is because the FCC has given a broad interpretation to the term rates, as used in Section 332. The prior FCC orders, not challenged in any way, not affected in any way by the Eleventh Circuit's decision, and prior Court decisions have interpreted the term rates charged to be very broad. It includes rate elements, rate levels, et cetera. So there's this broad interpretation of, and it should be distinguished from the other provision, which the states are allowed to regulate, which are other terms and conditions. What is your take on your, the other Mr. Johnson indicated that the Wilson case has an impact on our analysis. What's your take on that? Your Honor, I apologize. I haven't, I don't remember specifically the Wilson case, but based on Mr. Johnson's description of that case, I think what that case concerned was, in fact, the Ninth Circuit being asked to review an FCC order to invalidate or uphold an FCC order that had already been invalidated by another circuit. That's the Hobbs Act. That's not this case. So based on his description of the Wilson case, I don't think it's applicable. Again, I think the Hobbs Act is a red herring here. You probably don't think I need to recuse myself because we've got Johnson and Johnson here, right? No, sir, I don't. Okay, good. The term, the area that states are allowed to regulate, those other terms and conditions, includes things like billing information and practices, billing disputes, consumer protection matters, and those sorts of things. Do you agree that we have the right to treat the FCC's second order, let me see the exact terminology, the second record and order, just treat it as non-presidential, has no impact at all. I do, Your Honor. And we then are free to construe the word rate in the statute on our own? Yes, Your Honor. I think that the second, in light of the Eleventh Circuit's decision in the SUCA, that portion of the FCC's second record and order that deal with line item charges is as if it was a dissent in a circuit court case. Dissents may not have any precedential value, but the reasoning and the analysis and the structure and what they've looked at may be persuasive to this court. It just means that they couldn't find somebody else to agree with them is what it means. That may be the reason for a dissent, Your Honor, that's true. But it may also be that in lots of cases the split between the majority and the dissent is pretty fine, and it may be that later years the reasoning and the analysis of the dissent percolates to the majority. I think my point is simply that the FCC second record and order is not binding on this court. I don't think that the court has to give it Chevron deference, but I think that the arguments and the analysis and the legal reasoning that are outlined in that provision, that portion of the second record and order, are extremely persuasive and are consistent with what the district court did here. How do you handle the starting point of the 11th Circuit decision where it says that as to preemption of state law, we consider issues that arise under the Supremacy Clause, we start with the assumption that the historic police powers of the states are not superseded by federal law unless preemption is the clear and manifest purpose of Congress. So we start with the presumption that there is no preemption. But Section 332 of the Federal Communications Act, is Congress express intent? As to rates. As to rates charged. Other conditions. So in interpreting whether rates include line items charges or fall within other terms and conditions, shouldn't we pay attention to what the 11th Circuit in the SUCA said, that we create a presumption for interpretation purposes? Yes, Your Honor. But in determining, you're right, there is that presumption. If there was a clean slate, I might have a more difficult case. But we don't have a clean slate. We have numerous FCC orders that are not invalidated by the 11th Circuit. We have numerous Court of Appeals decisions in other circuits. Are these regulations cited in your brief? Yes, sir, they are. But let me explain why I think that what Mr. Peck argues is really rate regulation. What he's saying is that by he can't say that Singular cannot recoup the B&O surcharge. Because that would clearly be rate regulation. And, in fact, that's not what the Nelson case says, the Washington State Supreme Court case. It doesn't say you can't recoup it. What it says is you have to disclose it. Let me get to this collateral issue. But it touches on this disclosure point. Yes, sir. You make the claim that, putting aside for a moment the preemption issue. Let's say there's no preemption. You state that they failed to state a claim. They have not stated a claim because of inadequate pleading. But under Apple Way, Chevrolet, and the fact that the RCW 82.04.500 is a consumer protection statute, isn't this supposed to be liberally construed? And isn't the pleading on that basis adequate? Do you mean? Well, what you're suggesting is that the pleading in this case, the complaint in this case, adequately articulated that their claim was Singular's failure to disclose it. Failure to disclose seems to be the guts of it. But here's why that's not true, Your Honor. The language of the complaint is very specific. The claims and the allegations in the complaint are that Singular's assessing, billing, and collecting the B&O surcharge, regardless of how Singular had disclosed it, is unlawful under that statute. And the language of the complaint, for example, it's Singular's collection violates the act. Singular's collection is unlawful. Singular should be enjoined from billing and collecting. The argument that because of the Court of Appeals' decision in Nelson and now the Supreme Court's decision in Nelson says that it would be unlawful not to disclose it, that we should then have read this particular complaint to be a nondisclosure, it's a failure to disclose case, I think lacks merit. So we can't infer. I mean, if you read it, you can clearly, by inferring it, you can infer that it's a failure to disclose. You're saying that inferences in this situation are inadequate. Well, I do, Your Honor, and I think there's two reasons why. Mr. Peck had the option after the Court's decision. Mr. Peck argued that really this case is a failure to disclose case. And the district court said, no, it's not.  He had the option at that point to ask to amend his complaint to make it clear that it was a failure to disclose. He chose not to do that. Another reason why I think it's clear that his complaint is not a failure to disclose case is because the same lawyers brought on behalf of Mr. Peck himself a second case in which they clearly alleged that it was a failure by Singular to disclose the charge. They also brought another case, the Rentsch case. Are those matters before us? Those matters are cited in the materials by both sides, Your Honor. In the Rentsch case and in the second Peck case brought by these same lawyers, they said that Singular had failed to disclose. So clearly they knew how to draft a complaint that addressed the issue of disclosure. In the Rentsch case, Judge Zille has already ruled. Okay, I get your point, and I appreciate your advocacy on this. But even though they did these, they filed these other claims, for purposes of this case and the pleadings in this case, Applewood Chevrolet, I read it to mean that there's a fair amount of flexibility here. Certainly your client was not blindsided by the nature of this claim, was it? Wasn't it put on notice of the nature of the claim? Notice of the nature of the claim in what regard? A failure to disclose. Not in the initial complaint that Mr. Peck filed and which is before this Court. I don't believe that it does. Okay, so you're saying that despite the obviously very persuasive and talented counsel that the company has, you just had no idea that this was a failure to disclose case? I don't know that I can say I had no idea.  One of the things that is important, and one of the attacks on the company's practices that is constantly done, is an allegation that we failed to disclose something. Let me ask you this. Let's just say, again, hypothetically. Let's just say hypothetically we said, hey, there's no preemption here. We're going to send this back. Should we tell the district court to permit them to amend the complaint so you could state that it's a failure to disclose or you already know enough? I think this Court can essentially do anything it wants to do. If it wants to send it back and if it wants to tell the district court to allow the plaintiff to amend it. I'm just saying for purposes of pleading, does it really make any difference to your client here? I mean, you're a very sophisticated lawyer. You've got a very sophisticated company. You know what this complaint is about. Doesn't that satisfy the Washington Consumer Statute involved here? If, arguendo, the case is sent back to the district court. It brings me back, Your Honor, to mention the status of the Renshie case because Judge Zille has already ruled on summary judgment as a matter of law that the Consumer Protection Act claim has been dismissed because Singular did not commit any deceptive, unfair act or practice, and it adequately disclosed this charge. Okay. So then you can have a motion of summary judgment. Absolutely. If it goes back, I will move for summary judgment based on the merits. Okay. But, again, for purposes of pleading, which is really all that's before us, it really wouldn't be necessary to basically default the pleading. You would be able to go forward with your motion for summary judgment and the district judge would do whatever the district judge is going to do. Isn't that fair? That is fair, Your Honor. Okay. But the district court in this particular case didn't reach the sufficiency of the pleadings because he said they were preempted, right? He did address, Your Honor, in his preemption order. He did address the sufficiency. If he said it's preemption, if he said it's preempted, then what? There was an initial step before that. Anything he says, though, well, when he comes to the idea that there's preemption, then that means that that issue, whatever he says about it, is pure dicta. Not entirely, Your Honor, and here's why not. The plaintiff in the case. Well, he had no jurisdiction to say anything about it if it's preempted. Well, but the plaintiff in the case argued in the motion to dismiss based on preemption that his claim was a Consumer Protection Act claim and that it was a failure to disclose. Sure, but the district judge said, no, it's preempted. You're in the wrong ballgame. And I think the district court was entitled to say that. I don't think that that's the first step. I don't think that his second step, finding that the claim was preempted. Once he says that he's preempted, what's he talking about? He's talking about something he has no jurisdiction to talk about. I think he is entitled to analyze the complaint to determine whether it is a complaint that is preempted, and that's what he did. He can say, this claim, here's the claim. I believe it's preempted, but he can't say anything about the merits of the claim, because he has no jurisdiction to do so. He wasn't talking about the merits of the claim. He was talking about whether the claim was sufficiently stated in the complaint. He doesn't have any jurisdiction to make that determination because he doesn't have jurisdiction. He's preempted. I think he does because the preemption goes to whether the claims in the complaint are preempted, and I think the district court properly sits in the position of determining what are the claims. Oh, I understand that, but then he says, here's the claim. I have no jurisdiction. He doesn't have any ability to say the claim is good, bad, indifferent. I don't have... I understand, Your Honor. May I make one last point with regard to why I think that what we're talking about here is rates. If you look at what were the options that Singular had in this situation, clearly Singular is entitled to surcharge for the B&O. If any suggestion that it can't would be preempted state rate regulation. Mr. Peck says it can't even list it as a line item. Well, if it can't list it as a line item on the consumer's bill, what are the other options? Option one would be for Singular to set out a separate base rate for Washington consumers. It would be a base rate that is different from other states. For example, it would be different from the base rate that Singular could charge for consumers in Kentucky. Kentucky has already found that a line item for recouping a gross receipts tax is not preempted but is unconstitutional under the First Amendment. So Singular can go and use a different rate because it can recoup on a line item in Kentucky where under Mr. Peck's interpretation here it could not. And other states differ. In other states, B&O taxes differ. I don't think the other Mr. Johnson is saying that you can't work your B&O rate into your permitted rates. Your Honor, that's the only other option. The options are if I can't use a line item, I either have to charge separate rates, the balkanization of the states, which is exactly what Congress wanted to avoid, by charging separate base rates around the country depending on what are the state's laws in those particular states. Or I have to fold it into the- And Washington State will learn that taxes are never on business but always on customers. But it will take some time for them to learn that. But, Your Honor, Congress's intent in Section 332 was to avoid exactly what the plaintiff is asking this court to do, is to force Singular to set rates at different levels in different states. 332 doesn't say rates by a wireless carrier must be uniform for the United States. Well, it doesn't expressly say that. It would be the same, wouldn't it? It doesn't expressly say that. But what Congress was intending and what the legislative history and what courts who have examined 332 have said is one of the reasons that Congress did that was because the radio waves aren't bound by any particular state, aren't bound by the state's boundaries. And what they were looking for was a national policy, a uniform policy for wireless carriers to use. One uniform policy could be wireless carriers can charge whatever they want? That could be a policy. I think your time's up. Thank you, Your Honor. Is there anything else? Mr. Johnson. Thank you, Judge Bea. I had a few comments about some of the matters that were raised, but if the court has questions, I'll take those because I only have a couple minutes. On the collateral matter, the pleading matter that Judge Smith raised, I noted that when counsel was describing what the complaint actually says, he had to insert, regardless of disclosure, in the way he described our pleading. In other words, the inference that he was drawing from our pleading was that we didn't care about disclosures, but that's the opposite of the way the court reviews a motion to dismiss. And on the notice question, there was actually discovery in the trial court, and actually some of it is before this court in the beginning of the excerpts of Record 24. We have deposition testimony about disclosures singular made. From your perspective, given the fact that the district court found that this case was preempted, what impact, if any, does all that earlier filing have? Is it just as if it never occurred? Are we entitled to consult it, not consult it? Where does that stand? I'm sorry, which earlier filings? You mentioned that there's deposition testimony that's filed. Judge Hood talked about the discussion about the sufficiency of the pleading. And my question is, since the district court ruled that this was preempted, he had no jurisdiction, what use, if any, can we make of the earlier pleadings that are on record in this case? Are they of any value at all? No. I mean, only if this court were to agree with singular on that the Hobbs Act is a red herring, that Nasuka was wrong, that the Federal Communications Act preempts the state statute, the B&O tax statute, and Mr. Peck's pleading of it. Then the question arose for the district court, well, is Mr. Peck alleging something that does not rely on this state statute, B&O tax statute? Is he alleging that under the Consumer Protection Act they engaged in a deceptive practice by not disclosing this, or did they breach the contract by charging this when the contract doesn't include it? Those questions, the judge said, the district judge said, were not raised in the pleading. So I think the district court acknowledged those claims would not be preempted, and it's without any dispute between us that they wouldn't be preempted. But the judge said, you didn't plead him. And we said, well, yes, we did under the standards. It's easily inferable. And he said no. So that's the only way you would reach that issue. All right. Thank you very much, counsel. Thank you, Your Honor. I want to thank both counsel for very interesting presentations. And this court will stand adjourned until tomorrow at 9 o'clock. Oh, yeah. As to, for the purposes of the record, the other cases which have been submitted on the brief are Hoff v. Astru, Chrysler v. United States of America, Senko v. Astru, and Kaiser v. United States of America. Thank you. Thanks.
judges: Bea, Smith, Hood